UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **DONZELL HOLLAND** | * | **CIVIL ACTION NO. 09-1832** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAG. JUDGE KAREN L. HAYES** |

REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice.

BACKGROUND & PROCEDURAL HISTORY

Donzell Holland ("Holland") protectively filed the instant application for Title XVI Supplemental Security Income ("SSI") and Social Security Disability Income ("SSDI") payments on June 25, 2007. (Tr. 85-92, 105). He alleged disability since March 31, 2006, because of recurring hernia, rotator cuff in the left shoulder, and a bad back and resulting pain and limitations in his ability to stand and walk.[1]  *Id.*  The claim was denied at the initial stage of the administrative process, on August 16, 2007. (Tr. 51-54). Thereafter, Holland requested and received an October 15, 2008, hearing before an Administrative Law Judge ("ALJ"). (Tr. 22-24,

---

[1] A prior application was denied by an Administrative Law Judge on April 23, 2007. (Tr. 37-47).

36, 51-54, 55-56).  However, in a March 4, 2009, written decision, the ALJ determined that Holland was not disabled in accordance with Rules 202.11 and 202.18 of the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpt. P, App. 2.  (Tr. 18).  The ALJ further found that Holland retains the residual functional capacity ("RFC") to perform "the full range of light work."  (Tr. 15-16).  Holland appealed the adverse decision to the Appeals Council.  On August 25, 2009, however, the Appeals Council denied Holland's request for review; thus, the ALJ's decision became the final decision of the Commissioner.  (Tr. 1-3).

On October 23, 2009, Holland sought review before this court.  He alleges the following errors,

(1) The ALJ's finding that Holland retains the RFC to perform light work is not supported by substantial evidence as it was based on the 2006 report of Dr. Hebert, a consultative physician, who evaluated Holland prior to the period at issue;

(2) The ALJ failed to properly evaluate Holland's subjective complaints and credibility; and

(3) The Commissioner failed to sustain his burden of establishing that there is other work in the national economy that Holland can perform.

### Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards.  *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).  Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986).  Substantial evidence is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. Substantial evidence lies somewhere between a scintilla and a preponderance. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

### Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows:

  (1)  An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

  (2)  An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

  (3)   An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

  (4)  If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

  (5)  If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See, Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001);  20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).  When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).  If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## ANALYSIS

**I.** **Steps One, Two, and Three**

  The ALJ determined at Step One of the sequential evaluation process that Holland did not engage in substantial gainful activity during the relevant period. (Tr. 14-15).  At Step Two, the ALJ found that Holland suffers severe impairments of recurring hernia and osteoarthritis.  (Tr. 15).  The ALJ concluded, however, that the impairments were not severe enough to meet or

medically equal one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4, at Step Three of the process. (Tr. 16-16).

## II.    Residual Functional Capacity

The ALJ next determined that Holland retains the RFC to perform the full range of light work. (Tr. 16–17).[2] The ALJ further determined that Holland:

> can occasionally lift and/or carry (including upward pulling) 20 pounds occasionally and 10 pounds frequently; stand and/or walk (with normal breaks) or a total of about 6 hours in an 8-hour workday; sit (with normal breaks) for a total of about 6 hours in an 8-hour workday; perform push and/or pull operations; and occasionally climb, balance, stoop, kneel, crouch, and crawl.

(Tr. 16).

Plaintiff contests the ALJ's determination that, although Holland's "ability to function in the workplace has been compromised by documented impairments, his residual functional capacity accommodates his limitations as set forth above." (Tr. 17). Specifically, plaintiff contends that the ALJ improperly relied on a 2006 report prepared by David Hebert, M.D., for use in evaluating plaintiff's earlier claim. Dr. Hebert evaluated plaintiff on July 5, 2006, and determined that "despite the claimant's medical problems, he saw no reason why Mr. Holland could not do routine walking, sitting, standing, carrying and lifting for an 8-hour day." *Id.* Because Dr. Hebert's determination was based on a 2006 examination of plaintiff, his report

---

[2] Light work entails:
> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

"cannot provide substantial evidence to support a finding regarding Mr. Holland's RFC as of April 24, 2007," the start of the relevant period of the underlying determination.  Doc. # 10, p. 6.

Plaintiff continues that the record is devoid of "any medical opinions regarding Mr. Holland's functional ability during the relevant period." *Id.* at p. 7.  Because there was "evidence documenting a worsening of Mr. Holland's pain complaints," plaintiff argues, "the ALJ committed reversible error in not updating the record with a recent consultative examination." *Id.*

Plaintiff offers no evidence supporting his claim that the ALJ was prohibited from considering medical evidence from the time period preceding April 24, 2007.  To the contrary, the relevant regulations specifically provide that evidence of a disability includes "everything that shows you are...disabled."  20 C.F.R. § 404.1512(a).  Under the regulations, the agency "will develop your complete medical history for at least 12 months preceding the month in which you file your application unless there is reason to believe that development of an earlier period is necessary."  20 C.F.R. § 404.1512(d).

In his reply brief, Holland notes an ALJ's duty to "investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103 (2000) (citing *Richardson v. Perales*, 402 U.S. 389 (1971)).  Plaintiff again claims that the ALJ erred in failing to develop the record by ordering a consultative examination. *See* doc. # 12, p. 4.  However, plaintiff neglects to offer a reference that an ALJ fails to adequately develop a record when he does not order a consultative examination, or that an ALJ's consideration of an earlier examination is improper.

The court further finds substantial support for the ALJ's determination that plaintiff's complaints regarding pain were inconsistent with the findings of the RFC assessment.  (Tr. 16-

17).  Plaintiff contends that the ALJ failed to account for his complaints of pain.  The court recognizes that pain is considered disabling under the Social Security Act only when it is "constant, unremitting, and wholly unresponsive to therapeutic treatment."  *Selders v. Sullivan*, 914 F.2d 614, 618-619 (5th Cir. 1990).  When assessing credibility, the ALJ is required to consider the objective medical evidence, the claimant's statements, the claimant's daily activities, and other relevant evidence.  SSR 96-7p.  The ALJ is also obliged to consider inconsistencies in the evidence and conflicts between the claimant's statements and the remainder of the evidence.  20 C.F.R. § 404.1529(c)(4).

Factors that the ALJ may consider in evaluating the claimant's subjective complaints include: (1) claimant's daily activities; *Falco v. Shalala*, 27 F.3d 160 (5th Cir. 1994); *Anthony v. Sullivan*, 954 F.2d 289, 296 (5th Cir. 1992); *Reyes v. Sullivan*, 915 F.2d, 151, 155 (5th Cir. 1990); (2) medication the claimant takes for pain; *Anthony v. Sullivan, supra; Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990); (3) degree of medical treatment; *Villa v. Sullivan, supra; Nickerson v. Secretary of Health and Human Services*, 894 F. Supp. 279 (E.D. Tex. 8/3/1995)*;* (4) lack of medical opinions in the record indicating the claimant is precluded from performing the level of activity indicated by the ALJ; *Villa v. Sullivan, supra;* and (5) external manifestations of debilitating pain such as marked weight loss.  *Falco v. Shalala*, 27 F.3d 160 (5th Cir. 1994); *see also* 20 C.F.R.§§404.1529(C)(3)(I)-(vii), 416.929(c)(3)(I)-(vii) (1993).  Yet, the ALJ need not follow formalistic rules in his credibility assessment.  *Falco v. Shalala*,  27 F.3d 160, 164 (5th Cir. 1994).

In this case, the ALJ noted plaintiff's allegations that his condition had worsened in the two years since the last hearing.  (Tr. 25).  The ALJ further noted that plaintiff had not worked at any time during those two years, as Holland felt that there were no jobs that he could perform.

(Tr. 16, 25). Plaintiff stated that he did "pretty much nothing" during the day. *Id.* (Tr. 15, 26). Plaintiff had complaints regarding pain in his back and shoulder. (Tr. 26). Plaintiff also stated that his stomach lining had been tearing again, and that he "might need surgery." *Id.* Plaintiff stated that he used to be able to hike "for about 20 minutes," but that he no longer was able to. *Id.* Plaintiff also provided that he could not "lift anything over 10, 15 pounds," and that if he were confronted with an "emergency" where he had to lift 30 pounds, he feared injuring his stomach and back further. (Tr. 27, 29, 31). Plaintiff also relayed that he was having trouble sleeping "because of pain" in his shoulder. (Tr. 29).

Plaintiff stated that he had visited Dr. John Reeves at Northern General Medical Center, who informed Holland that his "stomach lining tore again" and he was "going to need surgery to repair it." *Id.* The record reflected that plaintiff had three previous hernia surgeries, the last one in April 2006. *Id.* Plaintiff also had surgery on his left knee in the past, and continued to complain of "swelling" in his left knee. (Tr. 30). Plaintiff estimated that he could stand up for "about 30 minutes, maybe a little longer" before he would experience pain problems. *Id.* Plaintiff estimated that he could walk "about 10 minutes" before he would have to stop and rest. *Id.* Plaintiff stated that he did not have "too much" trouble with sitting for any length of time. (Tr. 30-31).

Since his previous hearing in front of the ALJ in 2006, plaintiff relayed that he had received medical care at LSU E.A. Conway and Northern General Medical Center. (Tr. 31). He stated his "biggest pain issue would be between [his] hernia and [his] back." (Tr. 32). Holland provided that, concerning the pain in his stomach, there was no "particular event" that caused further tearing in his stomach; rather, plaintiff was informed by Dr. Reeves that his stomach just "flares up" over time. (Tr. 33). Finally, Holland provided that, at his previous job as a furniture

builder, he had to lift anywhere between 35 and 100 pounds, and that he could not return to that job given his current pain issues. (Tr. 32).

In his decision, the ALJ did not question that plaintiff suffered some pain; he only determined that plaintiff's allegations of disabling pain were not credible. (Tr. 15-16). In support of his argument that the ALJ did not properly evaluate plaintiff's subjective complaints and credibility, plaintiff argues that the ALJ "did not find specific reasons for [the] credibility finding as required." Doc. # 10, p. 8. However, the record illustrates the ALJ's reasoning in making the determination that plaintiff's alleged symptoms are not credible "to the extent they are inconsistent with the [RFC] assessment." (Tr. 16-17). For example, the ALJ notes plaintiff's previously described consultation with Dr. Hebert, during which the doctor "said that, despite [Holland]'s medical problems, he saw no reason why Mr. Holland could not do routine walking, sitting, standing, carrying and lifting for an 8-hour day." (Tr. 17). Indeed, the ALJ gave credence to plaintiff's subjective complaints over the opinion of the Agency consultant, Hollis D. Rogers, M.D., who on August 18, 2007 opined that Holland had "no severe impairments at all." (Tr. 17, 152). Contrary to Dr. Rogers' report, the ALJ determined that the "evidence shows some limitations on [Holland]'s ability to lift/carry." (Tr. 17).

In other words, the ALJ effectively favored the medical assessments and limitations recognized by the consultative physician to the extent that they conflicted with plaintiff's self-professed limitations. The ALJ's discussion met the requirements of 20 C.F.R. § 404.1529, and his resolution is supported by substantial evidence. *See, Undheim v. Barnhart*, 214 Fed. Appx. 448 (5th Cir. Jan. 19, 2007) (unpubl.) (opinion as a whole gave sufficient reasons and documentation for the ALJ's credibility determination); *Cornett v. Astrue*, 261 Fed. Appx. 644 (5th Cir. Jan. 3, 2008) (unpubl.) (ALJ gave some weight to claimant's complaints; thus

9

claimant's arguments that his subjective complaints were not given enough weight is unavailing); *Hernandez v. Astrue*, 2008 WL 2037273 (5th Cir. May 13, 2008) (unpubl.) (despite claimant's subjective allegations of pain, the ALJ gave "greatest weight" to treating physician's opinion).

### III. Step Four

At Step Four of the sequential evaluation process, the ALJ noted that Holland had past relevant work as a furniture builder, which required him to lift up to 100 pounds. (Tr. 17). As plaintiff is now restricted to carrying and/or lifting no more than 20 pounds, the ALJ determined that he was unable to return to his past relevant work. *Id.*

### IV. Step Five

At Step Five of the sequential evaluation process, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Holland can perform. (Tr. 18). The ALJ specifically stated that, considering plaintiff's "age, education, and work experience, a finding of 'not disabled'" was appropriate. (Tr. 18). Plaintiff argues that the Commissioner failed to sustain his burden of establishing that there is other work in the national economy that Holland can perform due to the ALJ's failure to obtain vocational expert testimony. Holland contends that vocational expert testimony is necessary in light of his "significant non-exertional limitations." Doc. # 10, p. 9.

The Fifth Circuit has stated that "[w]hen the characteristics of the claimant correspond to the criteria in the Medical-Vocational Guidelines of the regulations, and the claimant either suffers only from exertional impairments or his non-exertional impairments do not significantly affect his residual functional capacity, the ALJ may rely exclusively on the Guidelines in determining whether there is other work available that the claimant can perform." *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). Therefore, the ALJ was entitled to rely solely on

the grids if Holland's nonexertional limitations are not significant enough to affect his residual functional capacity.

Plaintiff alleges that his "non-exertional limitations" include "significant pain as a result of his recurring hernias," "orthopedic complaints," "abnormalities in [his] right forearm, left knee, and spine;" and "abnormalities in his right hand." Doc. # 10, pp. 9-10. However, plaintiff neglects to articulate how these limitations actually impede his ability to perform light work. The mere diagnosis or presence of an impairment is not disabling in the absence of a showing of functional impairment. *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983). Regulations provide that a claimant's allegations alone are not enough to establish the existence of a physical or mental impairment; impairments must be demonstrated by objective medical evidence. *See* C.F.R. §§ 404.1528(a), 404.1529(a).

Regarding plaintiff's pain complaints, pain is not a *per se* non-exertional impairment. *See Scott v. Shalala*, 30 F.3d 33, 35 (5th Cir. 1994); *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). The Fifth Circuit has rejected claims that the Guidelines were improperly applied based upon pain as a presumed non-exertional impairment where substantial evidence supported the ALJ's determination that pain did not further limit the claimant's ability to perform the assessed residual functional capacity. *Selders*, 914 F.2d at 618-19; *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Additionally, Holland argues that various x-rays illustrate "abnormalities" in various parts of his body, but does not specify how these abnormalities have limited him beyond the restrictions the ALJ has already assessed. In the 2006 examination by Dr. Hebert, plaintiff presented with a history of right forearm and biceps abnormalities due to gunshot injury in 1971; it was noted that plaintiff retained "excellent function" in the arm. (Tr. 138, 141). In his reply,

plaintiff points to different x-rays, taken April 18, 2007, that he claims further demonstrate the abnormalities in his right forearm, left knee, and lumbar spine. (Tr. 143). However, these x-rays also indicate that plaintiff was not suffering from pain so severe that it limited his ability to perform light work. Specifically, the x-rays document "moderate degenerative changes" in the "medial joint compartment" of plaintiff's left knee. *Id.* The x-ray of plaintiff's lumbar spine showed "no evidence of fractures or subluxation[3];" "osseous structures[4]" were "within normal limits." *Id.* Again, in his reply, plaintiff makes the conclusory assertion that these determinations demonstrate that Holland was "a great deal worse" since his previous application for benefits, and "show a significant deterioration in [plaintiff]'s condition, as alleged." (Tr. 25). Again, however, plaintiff does not show how the alleged deterioration in his condition prevents him from performing any job in the national economy.

## CONCLUSION

For the foregoing reasons, the undersigned finds that the Commissioner's determination that Donzell Holland was not disabled under the Social Security Act, is supported by substantial evidence and is free of legal error. Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision to deny disability benefits be **AFFIRMED**, and that this civil action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written

---

[3] "Subluxation" is "partial dislocation." Medline Plus, a Service of the U.S. National Library of Medicine and the National Institutes of Health, Medical Dictionary at http://www.nlm.nih.gov/medlineplus/mplusdictionary.html

[4] Bone structures in the area of the lumbar spine; "osseous" is "relating to bone." Medline Plus, a Service of the U.S. National Library of Medicine and the National Institutes of Health, Medical Dictionary at http://www.nlm.nih.gov/medlineplus/mplusdictionary.html

objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 21st of October, 2010.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE